IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
IN THE WESTERN DIVISION

| | |
|---|---|
| **KOFFI YOVO,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 2:23-cv-02329-JTF-tmp |
| | ) |
| | ) |
| **UNITED STATES CITIZENSHIP** | ) |
| **AND IMMIGRATION SERVICES,** *et al* | ) |
| | ) |
| **Defendants.** | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants United States Citizenship and Immigration Services ("USCIS"), Director of USCIS Ur Mendoza Jaddou, and Director of the USCIS Arlington Asylum Office Jedidah Hussey's Motion to Dismiss Plaintiff Koffi Yovo's Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed on July 20, 2023. (ECF No. 13.) Plaintiff filed his response on September 1, 2023, (ECF No. 21), and Defendants filed their reply on September 29, 2023, (ECF No. 28). For the reasons set forth below, the Motion is **GRANTED**.

**I.      FACTUAL BACKGROUND**

Koffi Yovo is a citizen of Togo, lawfully residing in Memphis, Tennessee while seeking asylum. (ECF No. 12, 2.) He applied for asylum on July 19, 2019, by submitting a Form I-589 Application for Asylum to the USCIS, the U.S. Department of Homeland Security agency responsible for adjudicating applications for asylum under § 245 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255. (*Id.* at 2 & 4.) He completed the fingerprinting

requirement shortly thereafter. (*Id.* at 2-3.) Since then, Plaintiff has not received an interview, the first part of the adjudication process as set forth in the statute. (*Id* at 3-5.)

Based on the foregoing, Plaintiff commenced this action against Defendants, alleging violations of the INA and the Administrative Procedure Act ("APA"), and arguing that he is entitled to relief under the Mandamus Act. (*Id.* at 5.) Defendants contend that Plaintiff's Complaint should be dismissed because the Court lacks subject matter jurisdiction over the APA and Mandamus Act claim, and because both claims fail to state a plausible claim to relief under Rule 12(b)(6). (ECF No. 13, 10-11.) They state that the same result follows if the Court converts the Motion into a Motion for Summary Judgment, because Plaintiff cannot prevail as a matter of law. (*Id.*)

## II.     LEGAL STANDARDS

### A.  Rule 12(b)(1)

A party may move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought. *Lovely v. United States*, 570 F.3d 778, 781-82 (6th Cir. 2009). "When a defendant attacks subject matter jurisdiction under Rule 12(b)(1), the plaintiff must meet the burden of proving jurisdiction." *Cline v. United States*, 13 F.Supp.3d 868, 870 (M.D. Tenn. April 7, 2014) (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). A motion for dismissal based upon a lack of subject matter jurisdiction is generally presented as either a facial or factual challenge. *Lovely*, 570 F.3d at 781-82; 2A James W. Moore, Moore's Federal Practice ¶ 12.07 [2.1], at 12-50 to 12-55 (2d ed. 1996). When a movant raises a facial challenge, it asserts that the complaint, on its face, fails to allege any facts, which if true, would establish a

2

ground for subject matter jurisdiction. *See Thomas v. United States*, No. 2:16-CV-2965-JTF-DKV, 2017 WL 5957770, at *1 (W.D. Tenn. Mar. 29, 2017).

### B.  Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id.* However, that requirement is inapplicable to asserted legal conclusions. "Threadbare recitals of the elements of a cause of action's elements, supported by mere conclusory statements" do not suffice. *Iqbal*, 556 U.S. at 678. The Court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III.  ANALYSIS

Defendants argue that Plaintiff's claims should be dismissed pursuant to (1) Rule 12(b)(1), because the Court lacks subject matter jurisdiction under either the APA or the Mandamus Act;

and (2) Rule 12(b)(6), because Plaintiff's Complaint concerning the delay in processing his asylum application fails to state a claim to relief that is plausible on its face. (ECF No. 13, 1.) Plaintiff maintains that jurisdiction exists because Defendants have a clear duty to act under the APA and the Mandamus Act, and that Defendants' delay is unreasonable on the merits. (ECF No. 21, 9.) The Court considers both of Plaintiff's arguments below.

### A. Relevant Statutory Provisions

#### 1. The Immigration and Naturalization Act

The INA permits any alien "who is physically present in the United States or who arrives in the United States. . . irrespective of such alien's status" to apply for asylum in this country. 8 U.S.C. § 1158(a)(1). The Secretary of Homeland Security or the Attorney General:

> may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General under this section if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

8 U.S.C. § 1158(b)(1)(A). The INA directs the Asylum Division of the USCIS to establish procedures by which an initial interview or hearing on an asylum application ordinarily would be conducted within 45 days after the alien files such an application. 8 U.S.C. § 1158(d)(5)(A)(ii). ("[I]n the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed."). The INA also directs the Asylum Division to complete adjudication of an asylum application within 180 days of its filling. 8 U.S.C. § 1158(d)(5)(A)(iii) ("[I]n the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed...."). Aliens may seek

asylum either affirmatively, before the USCIS, or defensively, during removal proceedings in immigration court. 8 C.F.R. §§ 208.2, 1208.2.

However, the INA also provides that "[n]othing in [Section 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7).

### 2. Subject Matter Jurisdiction under the Administrative Procedure Act

The parties dispute whether the Court has jurisdiction over Plaintiff's Complaint. Federal-question jurisdiction exists when the cause of action arises under federal law. *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1011 (6th Cir. 2018). Whether a cause of action arises under federal law must be apparent from the face of the "well-pleaded complaint." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Thus, for the purposes of assessing whether federal-question jurisdiction exists, federal courts ignore any potential federal defenses that may arise during the litigation. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

The APA does not confer jurisdiction on a district court to review an administrative agency's decision by itself. *See Califano v. Sanders*, 430 U.S. 99, 105-07 (1977); *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 440 (6th Cir. 2022) ("the federal courts' subject-matter jurisdiction in APA cases is bestowed by 28 U.S.C. § 1331"); *S. Ohio Coal Co. v. Donovan*, 774 F.2d 693, 700 (6th Cir. 1985), opinion amended on denial of reh'g sub nom. *S. Ohio Coal Co. v. Sec'y of Lab.*, 781 F.2d 57 (6th Cir. 1986) (noting that either 28 U.S.C. § 1331 or 28 U.S.C. § 1361 may confer jurisdiction in APA cases).  Here, the relevant provisions of the APA are (1) 5 U.S.C. § 555(b), which states that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter

5

presented to it"; and (2) 5 U.S.C. § 706(1), which states that a court reviewing agency action shall "compel agency action unlawfully withheld or unreasonably delayed."

Defendants contend that the Court lacks subject matter jurisdiction because 8 U.S.C. § 1158(d)(7), explicitly bars any suit arising from USCIS's failure to meet the timelines set forth in Section 1158(d)(5)(A). (ECF No. 13, 1-2.) As previously stated, 8 U.S.C. § 1158(d)(7) provides that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7). Defendants maintain that this bar divests the Court of subject matter jurisdiction because under 5 U.S.C. § 701(a)(1), federal courts cannot review an agency action when "statutes preclude judicial review." *Barrios Garcia*, 25 F.4th at 442 (quoting and analyzing 5 U.S.C. § 701(a)(1)).

The Court does not find that it is jurisdictionally barred from reviewing the agency's action here, as the Amended Complaint does not invoke the § 1158(d) timelines. To be clear, Plaintiff's claim is predicated on the USCIS's alleged failure to carry out its duties within a reasonable time, as required by 5 U.S.C. § 555(b) of the APA. (ECF No. 12, 5.) In fairness to Defendants, several of Plaintiff's assertions in the Complaint are susceptible to misinterpretation. For instance, Plaintiff states that he seeks "a final decision on his asylum application within the reasonable timelines required by law," and claims that "Defendants' delay in adjudicating Plaintiff's I-589 Application is unreasonable in relation to their stated processing times for like applications." (*Id.*) However, the Complaint never states that the APA claim is predicated on the USCIS's failure to comply with the stated guidelines, and both statements are consistent with the more cogent argument that the USCIS's failure to take any action on Plaintiff's asylum application in four years is unreasonable

when considering that the agency's stated soft guidelines indicate that the process is to be completed in 180 days.

Courts have rejected the Government's argument that 8 U.S.C. § 1158(d)(7) strips aliens of any private right of action to challenge agency delays in processing asylum requests, regardless of the delay's length. *See Xu v. Cissna*, No. 19 Civ. 2584 (KPF), 2020 WL 240839, at *5 (S.D.N.Y. Jan. 16, 2020) ("Plaintiff's right to adjudication within a reasonable time exists independently of § 1158(d), and the Court concludes that § 1158(d)(7) is not so broad as to strip Plaintiff of her right to challenge all delays in the adjudication of her asylum application, no matter how egregious."); *see also Alkassab v. Rodriguez*, No. 2:16-CV-1267-RMG, 2017 WL 1232428, at *4-5 (D.S.C. Apr. 3, 2017) (holding that § 1158(d)(7) is not a jurisdiction-stripping provision). The Court finds these decisions to be persuasive, and Defendants do not reference any cases within the Sixth Circuit in which a court has held that § 1158(d)(7) forecloses all judicial review of USCIS action or inaction. Additionally, were the Court to hold otherwise, it would be conferring the USCIS with the ability to shield all adverse asylum determinations from judicial review by simply refusing to reach a decision on the applications.

The Court concludes that it has subject matter jurisdiction to consider Plaintiff's claims under the APA. It next considers the substance of Plaintiff's APA claim.

### B. Plaintiff's Claim Under the APA

The APA provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it[.]" 5 U.S.C. § 555(b). [1] The Act also permits judicial review of an agency action

---

[1] Defendants point out that Plaintiff does not allege Defendants violated 5 U.S.C. § 555(b), but still argue that Plaintiff fails to allege facts necessary to support a § 555(b) claim because cases handling 5 U.S.C. § 706(1) claims—which

7

that is either not completed "within a reasonable time" or is "unreasonably delayed." 5 U.S.C. § 706(1).

"A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Barrios Garcia*, 25 F.4th at 451 (quoting *Gonzalez v. Cuccinelli*, No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021)). "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Id.* (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003)). Courts generally "have no basis for reordering agency priorities." *Id.* (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)).

When resolving whether an agency action has been unreasonably delayed, federal courts consider six factors from *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)—

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80; *see also Barrios Garcia*, 25 F.4th at 451-52 (applying the TRAC factors when reviewing a lower court's ruling pertaining to agency delay).

---

Plaintiff did allege—commingle the two statutes. (ECF No. 13, 18.) The Court considers the § 555(b) challenge for the reason Defendants provided, and because Plaintiff clarified the claim in his Response. (ECF No. 21, 13.)

Here, Plaintiff filed his asylum application on July 19, 2019, and is still awaiting both an interview and decision. (ECF No. 12, 2-3.) However, the passage of time alone cannot support a claim for unreasonably delayed administrative action. *See INS v. Miranda*, 459 U.S. 14, 18-19 (1982). Defendants counter that that their backlog of cases, COVID-19, and the "Last In-First-Out" ("LIFO") scheduling system are responsible for the delay in adjudicating Plaintiff's asylum application. (ECF No. 13, 4-6.) The LIFO system involves:

> [T]he Asylum Division schedule[s] recently filed affirmative asylum cases for interview ahead of older cases. 'By giving priority to the newest cases, applicants [are] on notice that filing asylum applications solely to obtain employment authorization carried a risk that their cases would be heard quickly and that their efforts would be fruitless.'
> (*Id.* at 5.)

The USCIS and its predecessor, the Immigration and Naturalization Services ("INS"), followed the LIFO policy from 1994 to 2014. (*Id.* at 5.) After implementing a First-In-First-Out ("FIFO") scheduling system in 2014 that proved ineffective, the USCIS returned to the LIFO policy in 2018. (*Id.* at 6.) This shift in policy was an attempt to deal with the fact that individuals who have pending affirmative asylum applications are eligible for certain types of employment authorization documents. Many asylum seekers allegedly filed frivolous or fraudulent asylum applications to obtain authorization for lawful employment. (*Id.* at 4.) The INS instituted the LIFO policy in part to reduce that incentive. (*Id.*) Although initial use of the LIFO system resulted in a reduction in the backlog of asylum applications, in 2013 and 2014 an increase in the other types of cases the Asylum Division processes led to an increased backlog in asylum applications, and

> [w]ith so few officers adjudicating affirmative asylum applications, the LIFO scheduling system was no longer an effective tool for discouraging non-meritorious or fraudulent applications. [] Consequently, in December 2014, the Asylum Division changed to a First-In-First-Out ("FIFO") scheduling system whereby asylum interviews were scheduled in the order that the applications were filed to reflect the priorities at the time.
> (*Id.* at 6.)

9

USCIS found that the implementation of the FIFO system resulted in an increase in fraudulent filings to obtain employment authorization. (*Id.* at 6.) Hence, they returned to the LIFO system. (*Id.*) At the same time, the USCIS adopted additional measures to address the backlog, including hiring nearly 500 new officers and implementing new technology to streamline the process. (*Id.* at 7.)

The Court concludes based on the stated reasons that the delayed adjudication of Plaintiff's asylum application, while regrettable, is not the result of a lack of diligence by either Plaintiff or Defendants. Rather, it is the result of the LIFO rule, which itself is a reasoned response to a systemic crisis. In addition, the Court takes note of the difficulties that the USCIS incurred as a result of the COVID-19 pandemic, such as the fact that "the asylum offices were closed from March 18, 2020-June 4, 2020," and that "though now reopen, health precautions have reduced the agency's capacity to conduct interviews at the same level as before the pandemic, which has further increased delays." (*Id.* at 6.)

As for the *TRAC* factors, the Court must first consider whether the agency's use of the LIFO policy reflects adherence to a "rule of reason." *TRAC*, 750 F.2d at 80. The record indicates that USCIS employs the LIFO policy to guide its adjudication of asylum applications. Defendants have set forth reasons for the use of the LIFO system, and Plaintiff does not argue that the LIFO rule itself is unreasonable, or that it does not serve the purposes identified by Defendants. (ECF No. 13, 4-6.)  Thus, the Court cannot find that the LIFO policy does not constitute a "rule of reason." *TRAC*, 750 F.2d at 80; *see also Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020) ("the Court finds that the LIFO rule constitutes a rule of reason that satisfies the first TRAC factor" (citing *Zhu v. Cissna*, No. 18 Civ. 9698 (JRP), 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019))

(finding that the LIFO rule "sets forth a 'rule of reason' for the adjudication of asylum applications")).

The second *TRAC* factor asks whether Congress has provided a timetable that "may supply content for this rule of reason." *TRAC*, 750 F.2d at 80. Congress provided a timetable for asylum application adjudications in 8 U.S.C. § 1158(d). That timetable contemplates an initial interview or hearing no later than 45 days after the application filing date, and a final adjudication within 180 days of filing, absent exceptional circumstances. 8 U.S.C. § 1158(d)(5)(ii)-(iii). However, Congress also instructed that the timeline would not be mandatory. As discussed above, 8 U.S.C. § 1158(d)(7) provides that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7). Thus, the Court cannot give 8 U.S.C. § 1158(d)'s timeline binding effect here.

The third and fifth *TRAC* factors direct the Court to consider the nature and extent of the interests prejudiced by the delayed adjudication. *TRAC*, 750 F.2d at 80. "[D]elays that might be reasonable in the sphere of economic regulations are less tolerable when human health and welfare are at stake." *Id.* Plaintiff contends that these factors favor him because he has endured emotional, familial, physical, and financial hardships directly caused by the delay in adjudicating his asylum application. (ECF No. 21, 24.) He refers to an attached personal affidavit in which he describes several significant hardships. (ECF No. 21-1, 1.) For example, he refers to emotional hardships brought on by having to flee his home country to avoid persecution and torture. (*Id.*) He also describes financial instability due to the destruction of his business in his home country and the corresponding need to start from scratch in the United States. (*Id.* at 2.)

11

While the Court acknowledges the seriousness of the alleged hardships, it finds that the third and fifth *TRAC* factors do not favor Plaintiff because he has not shown how these hardships are related to the delayed adjudication itself. As Defendants point out, Plaintiff has been permitted to live in the United States without fear of being removed to his home country while his application is pending, and Plaintiff has secured an employment authorization document from USCIS that allows him to pursue employment during the adjudication process. (ECF No. 28, 7.) Thus, it is unclear how the delay has prejudiced Plaintiff's welfare and health insofar as he is permitted to stay in the country and work to financially support himself while he awaits the adjudication of his asylum application.

The fourth *TRAC* factor requires the Court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Plaintiff does not argue that applications of similarly situated applicants have received better or worse treatment. Were this Court to grant Plaintiff the relief he seeks, Plaintiff would simply move to the "head of the line," leapfrogging other asylum applicants, and undermining the USCIS's stated reasons for implementing the LIFO system. As another court handling this issue put it:

> [L]eapfrogging Plaintiff[s'] application[s] to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication.... [G]ranting Plaintiff[s their] requested relief would have two other undesirable effects. First, it would undermine USCIS's ability to achieve the goal that motivated it to adopt the LIFO rule – specifically, to address the surge in newly-filed asylum applications that could leave the asylum system "increasingly vulnerable to fraud and abuse." ... [S]econd, granting relief to Plaintiff[s], [asylum petitioners] who [have] engaged the help of legal counsel to bring this suit, might have the perverse effect of "incentiviz[ing] defendants to prioritize those asylum applicants who have the wherewithal to retain private counsel and to bring suit in District Court."

*Xu*, 2020 WL 240839 at *7 (quoting *Pesantez v. Johnson*, No. 15 Civ. 1155 (BMC), 2015 WL 5475655, at *4).

Notably, were the Court to grant relief here, and in other delayed adjudication cases, Plaintiff's purpose in bringing this action would be frustrated in that subsequent plaintiffs' applications would be moved ahead of his. Thus, the Court finds that the fourth *TRAC* factor does not favor Plaintiff's position.

Having considered the *TRAC* factors and the cause of the delayed adjudication, the Court finds that Plaintiff has not pleaded facts demonstrating that the adjudication of his asylum applications has been unreasonably delayed.[2] The four-year period between the filing of Plaintiff's asylum application and the filing of the Complaint, while significant, is well within the range of time that other courts have found does not constitute unreasonable delay. *See Xu*, 2020 WL 240839, at *7 (collecting cases) (finding that other courts have found delays exceeding six years to be unreasonable).

### C. Plaintiff's Claim Under the Mandamus Act

Pursuant to 28 U.S.C. § 1361, Plaintiff also seeks to compel Defendants to "adjudicate Plaintiff's Asylum Application." (ECF No. 12, 2.) Defendants argue—and the Court agrees—that the Court lacks jurisdiction over the mandamus claim. (ECF No. 13, 11-12.)

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Ryon v. O'Neill*, 894 F.2d 199, 205 (6th Cir. 1990) (quoting 28 U.S.C. § 1361). Mandamus is appropriate where (1) there is a clear right to the relief sought; (2) the Government has a plainly defined a peremptory duty to perform the act

---

[2] The Court does not directly address the sixth *TRAC* factor as it is unclear what that consideration would entail. A review of other courts' decisions reflects that this is not unusual. *See Xu*, 434 F. Supp. at 55 (analyzing all but the sixth *TRAC* factor); *see also Ying Yu Liu v. Wolf*, No. 19 CIV. 410 (PGG), 2020 WL 2836426, at *10 (S.D.N.Y. May 30, 2020) (same); *Barrios Garcia*, 25 F.4th at 455 (same).

13

in question; and (3) there is no other adequate remedy available. *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir.1972) (citing *United States ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540, 543–44 (1937)). A court's authority to grant the requested relief depends on the nature of the duty sought to be compelled: relief "will issue only to compel the performance of a 'clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

Plaintiff's application for mandamus relief fails if the Court looks to the "reasonable" time referenced in the APA (5 U.S.C. §§ 555(b)), or the timeline set forth in 8 U.S.C. § 1158(d). Turning first to the APA reading, as addressed in the preceding section, Plaintiff has not demonstrated that the delay in adjudicating his asylum application violates the APA's requirement that agency action be completed "within a reasonable time." 5 U.S.C. §§ 555(b), 706(1). Additionally, because an "alternative adequate remedy" is possible under the APA, mandamus relief is precluded. *See Rimmer v. Holder*, 700 F.3d 246, 252 (6th Cir. 2012); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (holding that mandamus claim should be dismissed where it duplicates claims brought under the APA).

As to enforcement of the timeline set forth in 8 U.S.C. § 1158(d), Plaintiff refers to language in the statute stating that "'the initial interview or hearing on the asylum application *shall* commence no later than 45 days after the date an application is filed;' and that 'final administrative adjudication of the asylum application . . . *shall* be completed within 180 days after the date an application is filed.'" (ECF No. 21, 11-12. (internal citations omitted) (emphasis in original).) He maintains that the use of the word 'shall' in the relevant statutes and regulations shows that Defendants have a mandatory duty to act on the application. (*Id.*)

14

As previously discussed, Defendants contend that they have no duty to adjudicate Plaintiff's asylum application. (ECF No. 28, 2.) The Court rejected that argument in the context of the APA challenge, and rejects it here as well. However, the Court agrees with the narrower argument that § 1158(d)(7) of the INA bars Plaintiff from claiming any legally enforceable right to have his application adjudicated within the provided timeframe. Because Section 1158(d) does not create a legally enforceable right or benefit, Defendants do not owe Plaintiff a duty to adjudicate his application within the time frames set forth therein. Hence, Plaintiff does not have a "clear and indisputable right to the relief sought." Thus, the Court lacks subject matter jurisdiction over his claim for mandamus relief. *See In re Richard*, 914 F.2d 1526, 1527 (6th Cir. 1990).

### IV.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED** under Rules 12(b)(1) and 12(b)(6).

**IT IS SO ORDERED** this 14th day of December, 2023.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
United States District Judge
